UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SEA HOPE NAVIGATION INC,                                 :

                                                         :

                      Petitioner,                        :          OPINION & ORDER

                                                         :

            -v.-                                         :

                                                         :          13 Civ. 3225 (LAK) GWG)

NOVEL COMMODITIES SA,                                    :

                      Respondent.                        :
------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

        Petitioner Sea Hope Navigation Inc. ("Sea Hope") filed the instant petition to enforce a

foreign arbitral award against respondent Novel Commodities SA ("Novel" or "Novel

Commodities").  The Clerk entered Novel's default and Sea Hope moved for a default judgment.

Novel's opposition to Sea Hope's motion asserted that it had never received notice of either the

arbitration that resulted in the arbitral award or of the instant action.  As explained below, this

Court construes Novel's opposition to the motion for a default judgment as a motion to vacate

the Clerk's entry of default pursuant to Rule 55(c) of the Federal Rules of Civil Procedure.  For

the reasons that follow, the default is vacated.[1]

I.  <u>BACKGROUND</u>

        Sea Hope commenced this action by filing a petition to recognize, confirm, and enforce a

foreign arbitral award it obtained against Novel.  <u>See</u> Verified Petition to Recognize, Confirm,

_____

        [1]A motion to set aside an entry of default is subject to disposition by a magistrate judge
under 28 U.S.C. § 636(b)(1)(A).  <u>See</u> <u>J & J Sports Prod., Inc. v. Martinez</u>,  2013 WL 2147790, at
*1 n.2 (M.D.N.C. May 16, 2013) (citing cases).

1

and Enforce Foreign Arbitral Award, filed May 14, 2013 (Docket # 1) ("Petition").  According to the petition, Novel chartered a vessel from Sea Hope pursuant to a time charter party, but holders of bills of lading asserted claims against Sea Hope for cargo damaged by "stevedore negligence and rough handling."  Petition ¶¶ 8, 11.[2]  Sea Hope settled these claims and sought indemnification from Novel by commencing an arbitration in London.  Id. ¶¶ 11-12.  Novel, however, did not respond to the notice of appointment of Sea Hope's arbitrator, so the arbitration proceeded before a sole arbitrator, who ultimately rendered an award in Sea Hope's favor.  Id. ¶¶ 13-14.  About three weeks after the arbitral award was rendered, the arbitrator "posted a hard copy of the award" to Novel at an address in Geneva, but Novel failed to lodge an appeal within the time allowed under English law.  Declaration of James Horn in Further Support of Sea Hope's Motion for Default Judgment, filed Sept. 20, 2013 (Docket # 20) ("Horn Decl.") ¶ 9.

     Sea Hope served Novel with the summons and petition in the instant matter by personal delivery to Corporation Services Corporation ("CSC"), the entity listed with the New York Secretary of State as Novel's registered agent for service of process.  See Affidavit of Service, filed May 17, 2013 (Docket # 2); Ex. A. to Petition.  Novel's response to the petition was due on June 4, 2013, pursuant to Fed. R. Civ. P. 12(a)(1)(A)(i).  At Sea Hope's request, the Clerk of the Court entered a default against Novel on June 7, 2013.  See Declaration of Kirk M. Lyons in Support of Request for Clerk's Certificate of Default, filed June 7, 2013 (Docket # 4); Clerk's

---

[2]A charter party is "a specific contract, by which the owners of a vessel let the entire vessel, or some principal part thereof, to another person, to be used by the latter in transportation for his own account, either under their charge or his."  Asoma Corp. v. SK Shipping Co., Ltd., 467 F.3d 817, 823 (2d Cir. 2004) (citation and quotation marks omitted).  A bill of lading is "a document normally issued by the shipowner when goods are loaded on its ship, and may, depending on the circumstances, serve as a receipt, a document of title, a contract for the carriage of goods, or all of the above."  Id. (citation omitted).

Certificate of Default, filed June 7, 2013 (Docket # 5).  Sea Hope then filed a motion for a default judgment on July 29, 2013.[3]  The Court ordered Sea Hope to send a copy of its papers to the business address listed on Novel's website.  <u>See</u> Order, dated July 31, 2013 (Docket # 11). The papers were sent on August 1, 2013, <u>see</u> Declaration of Kirk M. Lyons in Support of Proof of Transmittal, filed Aug. 6, 2013 (Docket # 12) ¶ 3, and Novel states that it received them on August 2, 2013, <u>see</u> Declaration of Njack Kane in Support of Opposition to Motion for Default Judgment, filed Sept. 6, 2013 (Docket # 17) ("Kane Decl.") ¶ 6.  Seventeen days later, on August 19, 2013, attorney Patrick F. Lennon filed a notice of appearance on behalf of Novel.  <u>See</u> Notice of Appearance, filed Aug. 19, 2013 (Docket # 14).  The same day, Mr. Lennon sent a letter to the Court stating that Novel had never received service in this action, and that Novel only became aware of its pendency when it received the papers relating to the motion for a default judgment. <u>See</u> Letter from Patrick F. Lennon, filed Aug. 19, 2013 (Docket # 15).  On September 6, 2013, Novel filed its opposition to Sea Hope's motion for a default judgment, and Sea Hope thereafter filed its reply.[4]

## II.  <u>LAW GOVERNING CONTESTED MOTIONS FOR A DEFAULT JUDGMENT</u>

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against

---

[3]<u>See</u> Motion for Default Judgment, filed July 29, 2013 (Docket # 7); Memorandum of Law in Support of Motion for Default Judgment Recognizing, Confirming, and Enforcing Foreign Arbitral Award, filed July 29, 2013 (Docket # 10); Declaration of Kirk M. Lyons in Support of Motion for Default Judgment, filed July 29, 2013 (Docket # 8) ("Lyons Decl.").

[4]<u>See</u> Memorandum of Law in Opposition to Petitioner's Motion for Default Judgment, filed Sept. 6, 2013 (Docket # 16) ("Resp. Mem."); Kane Decl.; Declaration of Patrick F. Lennon in Opposition to Motion for Default Judgment, filed Sept. 6, 2013 (Docket # 18) ("Lennon Decl."); Horn Decl.; Reply Memorandum of Law in Further Support of Motion for Default Judgment Recognizing, Confirming, and Enforcing Foreign Arbitral Award, filed Sept. 24, 2013 (Docket # 22) ("Reply Mem.").

whom a judgment . . . is sought has failed to plead or otherwise defend, and that failure is shown

by affidavit or otherwise, the clerk must enter the party's default."  Rule 55(c) provides that

"[t]he court may set aside an entry of default for good cause, and it may set aside a default

judgment under Rule 60(b)."  As the Second Circuit has explained:

> The procedural steps contemplated by the Federal Rules of Civil Procedure
> following a defendant's failure to plead or defend as required by the Rules begin
> with the entry of a default by the clerk upon plaintiff's request. Rule 55(a). Then,
> pursuant to Rule 55(c), the defendant has an opportunity to seek to have the
> default set aside. If that motion is not made or is unsuccessful, and if no hearing
> is needed to ascertain damages, judgment by default may be entered by the court
> or, if the defendant has not appeared, by the clerk. Rule 55(b).

Meehan v. Snow, 652 F.2d 274, 276 (2d Cir. 1981).

    Although Novel did not move in haec verba to vacate the default entered against it by the

Clerk, the Second Circuit has held that "opposition to a motion for a default judgment can be

treated as a motion to set aside the entry of a default despite the absence of a formal Rule 55(c)

motion."  Meehan, 652 F.2d at 276 (citations omitted); see also Pall Corp. v. Entegris, Inc., 249

F.R.D. 48, 55 (E.D.N.Y. 2008) (allowing opposition to motion for default judgment to serve as

motion to set aside entry of default); Brown v. Gabbidon, 2007 WL 1423788, at *2 (S.D.N.Y.

May 14, 2007) (same).

    The factors used by courts to decide whether to set aside a default or a default judgment

are the same, but "courts apply the factors more rigorously in the case of a default

judgment . . . because the concepts of finality and litigation repose are more deeply implicated in

the latter action."  Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993) (internal citation

omitted).  The determination of whether to set aside a default is left to the "sound discretion of

the judge, the person most familiar with the circumstances of the given case and . . . in the best

position to evaluate the good faith and credibility of the parties."  Action S.A. v. Marc Rich &

4

Co., Inc., 951 F.2d 504, 507 (2d Cir. 1991) (citations and quotation marks omitted).  Because

Rule 55(c) does not define the term "good cause," the Second Circuit has established three

criteria that district courts must assess in deciding whether to relieve a party from a default:

"(1) whether the default was willful; (2) whether setting aside the default would prejudice the

adversary; and (3) whether a meritorious defense is presented."  Enron Oil Corp., 10 F.3d at 96

(citations omitted).  These criteria must be applied in light of the Second Circuit's "oft-stated

preference for resolving disputes on the merits."  Id. at 95; accord Meehan, 652 F.2d at 277

("Defaults are not favored . . . and doubts are to be resolved in favor of a trial on the merits.")

(citations omitted).  Additionally, "[o]ther relevant equitable factors may also be considered, for

instance, whether the failure to follow a rule of procedure was a mistake made in good faith and

whether the entry of default would bring about a harsh or unfair result."  Enron Oil Corp., 10

F.3d at 96.

III.  DISCUSSION

As permitted by case law, we will treat Novel's opposition to the motion for a default

judgment as an application to vacate the entry of default.  We discuss each of the three main

factors relevant to this issue in turn.

A.  Willfulness

The Second Circuit has interpreted "willfulness" in the context of a default to refer to

conduct that is "more than merely negligent or careless."  S.E.C. v. McNulty, 137 F.3d 732, 738

(2d Cir. 1998); see also Am. Alliance Ins. Co., Ltd v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir.

1996) (willfulness not shown where defendant's failure to answer complaint was "due to a filing

mistake by its in-house counsel's clerk" that "went unnoticed for two months" and was "grossly

negligent").

5

Case 1:13-cv-03225-LAK-GWG   Document 23   Filed 10/21/13   Page 6 of 13


As of May 7, 2013, CSC was still listed as Novel's "Registered Agent" with the New York State Department of State, Division of Corporations.  See Ex. A to Petition.  Sea Hope served CSC on May 14, 2013.  See Affidavit of Service; Lyons Decl. ¶¶ 4-5.  However, in October 2008, Novel had "ceased making payments to CSC" because "it wished to discontinue CSC's services as its registered agent."  Kane Decl. ¶ 4.  As a result, Novel "believed that CSC was no longer its agent."  Id.  Novel does not state that it ever registered a new agent for service with the Department of State.  Nor does it provide any explanation for its failure to do so.  Given the importance of this question to the Court's consideration of the willfulness issue, it is a mystery as to why Novel has failed to give this explanation.

It appears that despite not being paid, CSC made attempts to deliver papers to an address that Novel had once listed with it.  According to Novel's attorney, Lennon, Novel formerly had a "virtual" office arrangement at 80 Broad Street in New York City, but "this arrangement ceased approximately 2 years ago."  Lennon Decl. ¶ 5.  Lennon states that he spoke with CSC as part of his investigation of this matter and was advised that CSC "had forwarded by FedEx the documents served upon it" to the 80 Broad Street address four times.  Lennon Decl. ¶¶ 6, 8, 10.  The first time, the package was signed for by an unknown individual, and the next three times, the packages were "refused and returned to CSC."  Lennon Decl. ¶¶ 9-10.  CSC then forwarded the packages to Novel at an address in Geneva, Switzerland, which, according Lennon, has been out-of-date since December 19, 2012.  Id. ¶ 4.

Novel argues that because it "never received a copy of [the summons and petition] from CSC," Resp. Mem. at 6, and because it had "no intention of delaying this action or otherwise upsetting the legal process," id. at 7, its default was not willful.  As Sea Hope points out, however, Reply Mem. at 3, Novel's failure to provide the Secretary of State with a proper

address for service was in dereliction of its obligations under a New York statute that requires corporations authorized to do business in New York to apprise the Secretary of State of an address where he or she may forward legal process.  See N.Y. Bus. Corp. Law § 408 ("Each domestic corporation, and each foreign corporation authorized to do business in this state, shall, during the applicable filing period as determined by subdivision three of this section, file a statement setting forth . . . [t]he post office address within or without this state to which the secretary of state shall mail a copy of any process against it served upon him or her."); see also id. § 306 ("Service of process on a registered agent may be made in the manner provided by law for the service of a summons, as if the registered agent was a defendant.").

There is support for the notion that a defendant's failure to update an address with the Secretary of State does not by itself mandate a finding of willfulness.  FedEx TechConnect, Inc. v. OTI, Inc., 2013 WL 5405699, at *6 (S.D.N.Y. Sept. 23, 2013 ) (citing cases); see also Walden v. Lorcom Tech., Inc., 2007 WL 608151, at *3 (E.D.N.Y. Feb. 23, 2007) (failure to keep address of registered agent current with Secretary of State not willful within meaning of Rule 55(c)). Indeed, these decisions are in accord with the Second Circuit's holdings that, "negligen[ce]," "carelessness," and even "gross negligence," do not necessarily constitute willful conduct. McNulty, 137 F.3d at 738; Am. Alliance Ins. Co., Ltd , 92 F.3d at 61.[5]

---

[5]In In re Martin-Trigona, 763 F.2d 503 (2d Cir. 1985) (per curiam), the Second Circuit held that the defendants' "failure either to collect corporate mail sent to the [address on file with the Connecticut Secretary of State] or to change the address for service of process with the Secretary of State constitute[d] a willful disregard of legal process and a willful default."  Id. at 505-06.  We do not believe that this case compels us to find any failure to register a proper address with a Secretary of State necessarily constitutes a willful default.  The later cases of S.E.C. v. McNulty and Am. Alliance Ins. Co., Ltd. make clear that "negligent" and "grossly negligent" conduct will not by themselves support a finding of willfulness.  Accordingly, if there were a case where the failure to register was the result of merely negligent or grossly negligent conduct, a finding of willful default would not necessarily be justified.

Here, however, there is more than a mere failure to update the address listed with the Secretary of State.  There is also a failure to explain why, having decided to stop paying CSC, Novel took no action to update the address for a period of at least 4 1/2 years.  Novel's decisionmaking process on this point – such as the basis for the decision to stop paying CSC and any plans to substitute another agent – are left entirely to the imagination.  The Second Circuit has made clear that willfulness in the default context may be established where the conduct of the litigant is "not satisfactorily explained."  McNulty, 137 F.3d at 738.  Here, Novel's failure to give an explanation for its conduct is so egregious as to suggest that Novel's true purpose may have been to avoid service altogether.

In the end, we find that it is not necessary to reach this question definitively because the other relevant factors weigh so heavily in favor of vacatur of the default.  Accordingly, we will assume that Novel's default was willful within the meaning of case law and proceed to discuss the remaining factors.

B.  Prejudice

On the issue of prejudice, the Second Circuit has held that "[d]elay alone is not a sufficient basis for establishing prejudice."  Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983) (citations omitted).  "Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion."  Id. (citation and quotation marks omitted).  Sea Hope argues that it has "already been prejudiced by [Novel's] repeated attempts to delay the resolution of this dispute instead of appearing to arbitrate the matter on the merits."  Reply Mem. at 4.  It notes that Novel's failure to respond to this suit and the London arbitration "has resulted in repeated delays in numerous forums, including this one," which has forced Sea Hope to "engage in costly and protracted litigation

8

across the globe." Id.  Any arguments as to the effect of Novel's default in the London

arbitration, however, are not relevant to any prejudice that resulted from its default in this case.

Sea Hope does not identify any legally cognizable prejudice it will suffer if the instant action is

revived.  Indeed, it would be almost impossible to establish such prejudice given that Novel filed

an appearance with the Court less than one month after Sea Hope filed its motion for a default

judgment.  See, e.g., Mathon v. Marine Midland Bank, N.A., 875 F. Supp. 986, 993

(E.D.N.Y.1995) (delay of "several weeks" did not establish prejudice).  Accordingly, this factor

strongly favors vacatur.

     C.  Meritorious Defense

     Finally, on the question of a meritorious defense, the defendant "need not conclusively

establish the validity of the defense(s) asserted," Davis, 713 F.2d at 916, but need only present

evidence of facts that, "if proven at trial, would constitute a complete defense," Enron Oil Corp.,

10 F.3d at 98 (citations omitted).  The defendant "must, nonetheless, articulate a defense with a

degree of specificity which directly relates that defense to the allegations set forth in the

plaintiff's pleadings and raises a 'serious question' as to the validity of those allegations."

DeCurtis v. Upward Bound Intern., Inc., 2012 WL 4561127, at *8 (S.D.N.Y. Sept. 27, 2012)

(quoting Salomon v. 1498 Third Realty Corp., 148 F.R.D. 127, 130 (S.D.N.Y.1993)).

Importantly, "[l]ikelihood of success is not the measure."  Weisel v. Pischel, 197 F.R.D. 231,

239 (E.D.N.Y. 2000).  Rather, a defendant's "allegations are meritorious if they contain 'even a

hint of a suggestion' which, if proven at trial, would constitute a complete defense." Id. (quoting

Keegel v. Key West & Caribbean Trading Co., Inc., 627 F.2d 372, 374 (D.C. Cir. 1980)).

     Here, Novel asserts that it never received notice of the initiation or pendency of the

London arbitration.  It articulates a defense under the Convention on the Recognition and

Enforcement of Foreign Arbitral Awards ("New York Convention") as implemented by the

Federal Arbitration Act, 9 U.S.C. § 201 et seq.[6]  The New York Convention provides an

exception to enforcement of a foreign arbitral award where "[t]he party against whom the award

is invoked was not given proper notice of the appointment of the arbitrator or the arbitration

proceedings or was otherwise unable to present his case."  New York Convention, Art. V(1)(b).

"As interpreted by the Second Circuit, a party seeking to avoid confirmation of an arbitral award

on the basis of Article V(1)(b) must demonstrate that the award was rendered pursuant to

procedures inconsistent with the forum state's standards of due process."  Sonera Holdings B.V.

v. Cukurova Holding A.S., 895 F. Supp. 2d 513, 521 (S.D.N.Y. 2012) (quoting Iran Aircraft

Indus. v. Avco Corp., 980 F.2d 141, 145 (2d Cir. 1992)); accord Parsons & Whittemore

Overseas Co., Inc. v. Societe Generale De L'Industrie Du Papier (RAKTA), 508 F.2d 969, 975

(2d Cir. 1974) (under Article V(1)(b), enforcement of a foreign arbitral award may be denied if

the defendant can prove that it was "not given proper notice" under "the forum state's standards

of due process.") (citations omitted).  In the United States, "the fundamental requirement of due

process is the opportunity to be heard at a meaningful time and in a meaningful manner."  Iran

Aircraft Indus., 980 F.2d at 146 (quoting Mathews v. Eldridge, 424 U.S. 319, 333 (1976)

(internal quotation marks omitted)); accord Mullane v. Cent. Hanover Bank & Trust Co., 339

U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any

proceeding which is to be accorded finality is notice reasonably calculated, under all the

circumstances, to apprise interested parties of the pendency of the action and afford them an

---

[6]The Federal Arbitration Act provides that "[t]he Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall be enforced in the United States in accordance with this chapter."  9 U.S.C. § 201.  Sea Hope agrees that the arbitral award at issue in this case falls under the New York Convention.  See Petition ¶ 1.

opportunity to present their objections.") (citations omitted).

Novel contends that "the notice provided by Sea Hope to Novel of the commencement of arbitration, appointment of arbitrator and claims submissions should have been sent to RaetsMarine," Novel's marine insurer, which it says was the "point of contact in relation to Sea Hope's claims" and had previously been dealing with Sea Hope's insurance representatives in France. Resp. Mem. at 9. Instead, Sea Hope's lawyer and the arbitrator sent emails regarding the arbitration to "trading@novelcommodities.ch," a "generic Novel email address, which was not actively monitored by anyone at Novel." Id. Novel argues that it "received no other notifications of the arbitration proceedings by any other method, e.g., post, courier, facsimile, phone call, etc." Id. As a result, "no person within Novel was aware of Sea Hope's demand for arbitration or of the arbitrator's emails concerning the proceedings." Id. These facts, according to Novel, "constituted a defect in the arbitration procedure which deprived Novel of an opportunity to put forward a defense to Sea Hope's claim." Id. at 10. In response, Sea Hope provides factual proffers in the form of affidavit testimony from James Horn, a case handler at the entity that represented Sea Hope in the London arbitration, see, e.g., Horn Decl. ¶¶ 1, 3, 9, 10, 13, suggesting that Novel's contentions as to what occurred are "incredulous [sic] and akin to an argument that it did not receive any mail because it failed to check its mailbox!" and that, in any event, email notice is common in the London arbitration community. Reply Mem. at 6.

We do not consider Sea Hope's factual proffers, however, because it is inappropriate in considering whether Novel has a meritorious defense to judge the "credibility of [the parties'] affiants." St. Paul Mercury Ins. Co. v. M & T Bank Corp., 2012 WL 6043703, at *2 (S.D.N.Y. Dec. 5, 2012). If Novel's factual statements are accepted as true, a court might conclude that sending notice of an international arbitration to an email address taken off a website was not

sufficient to constitute adequate notice of the arbitration.  It might also conclude that the alleged subsequent mailing of the arbitral decision did not cure the initial lack of notice, and that these failings would constitute a complete defense to enforcement of Sea Hope's arbitral award under the New York Convention.  Accordingly, this factor weighs heavily in favor of vacatur.

       D.  <u>Weighing the Factors</u>

"[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party."  <u>Enron Oil Corp.</u>, 10 F.3d at 96; <u>see also</u> <u>Brien v. Kullman Indus., Inc.</u>, 71 F.3d 1073, 1077 (2d Cir. 1995) (a trial court's discretion in resolving motions for vacatur is circumscribed because of the Second Circuit's "preference for resolving disputes on the merits").  Although we have assumed <u>arguendo</u> that Novel's default was willful, Novel has also presented facts which, if credited, would constitute a complete defense to confirmation of the arbitral award rendered in Sea Hope's favor.  Moreover, it is clear that Sea Hope will suffer no prejudice from vacatur of the default in this case.  As a result, in light of the strong policy disfavoring defaults, the Court concludes that vacatur of the default pursuant to Fed. R. Civ. P. 55(c) is proper here.  <u>See</u> <u>generally</u> <u>U.S. Commodity Futures Trading Comm'n v. Musorofiti</u>, 2007 WL 2089388, at *6 (E.D.N.Y. July 17, 2007 ) (finding vacatur warranted despite willfulness of the default where defendant presented a meritorious defense and vacatur would work no prejudice to plaintiff); <u>Arthur F. Williams, Inc. v. Helbig</u>, 208 F.R.D. 41, 44 (E.D.N.Y. 2002) (same); <u>Tecnart Industria E Comercio Ltda. v. Nova Fasteners Co., Inc.</u>, 107 F.R.D. 283, 285 (S.D.N.Y. 1985) (same); <u>see also</u> <u>Walpex Trading Co. v. Yacimientos Petroliferos Fiscales Bolivianos</u>, 109 F.R.D. 692, 698 (S.D.N.Y. 1986) (denying motion for default judgment and vacating default where default "could be considered" willful but other factors favored vacatur).

12

IV.  CONCLUSION

For the foregoing reasons, the default entered by the Clerk (Docket # 5) is vacated.

Novel shall respond to the petition within 21 days.

SO ORDERED.

Dated:  October 21, 2013
         New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

13